# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Jace F. Eden,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-15-8020-PCT-DGC (JFM)<br><br>**Order and**<br>**Report & Recommendation**<br>**on Petition for Writ of Habeas Corpus** |

## I.     MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 29, 2015 (Doc. 1).  On August 6, 2015 Respondents filed their Answer (Docs. 26, 27).  Petitioner filed a Reply on September 9, 2015 (Doc. 29).

In addition, Petitioner has filed a Motion for Disclosure (Doc. 30) and Motion for Evidentiary Hearing (Doc. 31), the resolution of which is intertwined with the disposition of the Petition, and accordingly is addressed herein.

The Petitioner's Petition and motions are now ripe for consideration. Accordingly, the undersigned makes the following orders and proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.     RELEVANT FACTUAL & PROCEDURAL BACKGROUND

Petitioner seeks review of a sentence imposed on April 5, 2012 by Navajo County Superior Court based upon revocations of probation in case numbers CR2009-0017

1

(consolidated with CR2007-1075), and CR2009-0700, and new convictions in CR2009-00960, and CR2011-00340.[1]

## A.  FACTUAL BACKGROUND

**2007 DUI** - In case CR2007-1075, Petitioner was indicted for aggravated driving under the influence ("DUI"), while his license was suspended, revoked, etc. based on events on June 7, 2007.  (Exhibit B, Indictment.)  (Exhibits to the Answer, Docs. 26, 27, are referenced herein as "Exhibit ___.")

In case CR2009-0017, Petitioner was again indicted for events on June 7, 2007, for aggravated DUI, and aggravated driving with blood alcohol content over .08%, both denominated as third DUI convictions within 84 months.  (Exhibit D, Indictment.)

In addressing Petitioner's direct appeal, the Arizona Court of Appeals described the factual background of this offense as follows:

> Shortly after midnight on June 7, 2007, Officer Powell observed a vehicle driven by Eden speeding and failing to properly stop behind the curb line at a red light. When the traffic light changed, Officer Powell began following Eden and activated his patrol car's emergency lights. Eden did not immediately stop but instead turned down a side street and traveled some distance before stopping in a motel parking lot.
> When Officer Powell approached Eden and asked for his license, registration, and insurance documentation, the officer smelled the odor of alcohol coming from the cab of Eden's vehicle and noticed that his eyes were bloodshot and watery. Eden appeared to have difficulty understanding the officer's request, resulting in the officer having to ask several times for his license and registration. Eden initially denied consuming any alcohol, but later admitted having one glass of wine after the officer asked him to exit the vehicle for field sobriety tests. The officer observed all six cues of impairment when examining Eden for horizontal gaze nystagmus. In addition, Eden performed poorly on both the one-leg stand and heel-to-toe field sobriety tests. Testing of two breath samples obtained from Eden following his arrest evidenced blood alcohol content levels of .118 and .119 within one hour of driving.

---

[1] In his Petition, Petitioner cites a sentence date of September 1, 2011.  (Doc. 1 at 1.) That is the date of the related Plea Agreement (Exhibit DDDD).  Petitioner references pages 27 to 32 of his attached exhibits, which include the Plea Agreement from September 1, 2011, and the related Sentence from April 5, 2012, making clear the sentence to which he intends to refer.

(Exhibit P, Mem. Dec. 3/24/11 at 2-3.)

**Stalking Charge** – In case CR2009-0700, Petitioner was indicated for stalking and influencing a witness, based on events between February 2007 and July, 2009. (Exhibit T, Indictment.)    The Pre-sentence Report summarized the police report as follows:

> Jace Eden has engaged in a course of conduct starting in February of 2007 in which he verbally abused, sexually solicited and harassed the victim [HL]. Jace Eden is alleged to have stalked [HL] by watching her residence, trying to break into her residence and send harassing text messages. This behavior resulted in [HL] getting an alarm installed in her residence as she is afraid for her safety.

(Exhibit Y, at 2.)

**2009 DUI** – In case CR2009-0960, Petitioner was again indicted for aggravated DUI, and aggravated driving the blood alcohol content over .08%, both denominated as third DUI convictions within 84 months, based on events on August 16, 2009.  (Exhibit BB, Indictment.)    The Pre-Sentence Report summarized the factual background as follows:

> On or about August 16, 2009, Officer Mellor was in his patrol car and observed a vehicle traveling southbound at a high rate of speed. The Officer initiated a traffic stop. Upon making contact with the driver, Jace Eden, was identified by his Colorado Driver's License. The Officer could smell the odor of an intoxicating liquor. Jace was asked how much he had to drink and he stated he had not been drinking. Jace was asked to step out of his vehicle to perform field sobriety tests, to which he refused. He was also asked to blow into a portable breath test but also refused this test as well. Jace was arrested for DUI and transported to the Show Low Police Department. A search warrant was obtained to draw blood from Jace. He was then booked into the Navajo County Jail. The blood drawn was sent Department of Public Safety. On September 14, 2009, specimen showed it to contain .115% w/v ethyl alcohol.

(Exhibit YYY at 2.)

**2011 Sexual Abuse** – In case CR2011-0340, Petitioner was charged with engaging in non-consensual sex, based on events on May 13, 2011.  (Exhibit VVV, Indictment.)  The Pre-Sentence Report summarized the factual background:

> On or about May 13, 2011, Officer Williams was dispatched to the Branding Iron Steak House in reference to a sexual assault. Upon arrival, the Officer met with the victim, K. W., who advised

she had been drinking at the bar and knows Jace Eden from the bar. She mentioned she was done drinking for the night and was going home. K. W. indicates she paid for her bill but Jace advised her she needed to come back into the lounge to do something else with the bill. K. W. states Jace almost immediately grabbed her while they were alone in the lounge and pulled her pants down and pulled her shirt down. He then pulled his penis out and attempted to insert his penis into her vagina. She told him to please stop, and he said no, and he told her that "you know she wants it." She pushed him away and she screamed, but felt that nobody heard her at first. K.W. was asked if she had a romantic relationship with Jace, to which she stated no. Officers interviewed other witnesses, [LS}, [JB] and [JL], who stated they heard a scream and then saw K. W. running from the lounge with her breasts hanging out. They indicated K. W. was very upset and telling them Jace had raped her. Jace was located inside the lounge area and appeared to be very intoxicated as he had blood shot watery eyes, a strong odor of an intoxicating beverage coming from his mouth, and a lack of balance. Jace was arrested and read his Miranda Rights. He asked to contact his attorney, Kate Roberts. Kate later contacted officers and advised she could no longer practice law. Jace was advised of this and he requested to contact Ben Brewer. Jace was not interviewed about the incident after he had invoked his right to an attorney. Officer Fechtelkotter was asked to finger print Jace, and obtain a DPS swab for Department of Public Safety.

(Exhibit YYY at 1-2.)

## B.  <u>PROCEEDINGS ON 2007 DUI</u>

The two cases on the 2007 DUI, CR2007-1075 and CR2009-0017, were consolidated, and Petitioner proceeded to a jury trial on July 8, 2009.  Petitioner was found guilty of a lesser included offense of driving while impaired to the slightest degree, and aggravated DUI, a third DUI offense.  He was acquitted of the charge of DUI on a suspended license.  (Exhibit L, Verdict.)  On August 27, 2009, sentence was suspended, and Petitioner was placed on four years probation, with 4 months imprisonment as a condition of probation on each offense.  (Exhibit M, Sentence.)

Petitioner moved for correction of several errors in the sentence (Exhibit PPPPPP), and on January 15, 2010, the trial court corrected the sentence to clarify that the two prison terms of fourth months were concurrent.

**Direct Appeal** - In the interim, Petitioner filed a direct appeal (Exhibit NNNNNN), arguing he had been denied due process and his rights of confrontation

4

when the prosecution failed to disclose the existence of a video and audio recording of Petitioner's arrest and booking, and that the trial court's denial of the motion for sanctions based on the non-disclosure was an abuse of discretion. Petitioner further argued that his prison term should have been stayed.

The Arizona Court of Appeals affirmed in part and vacated in part. (Exhibit P, Mem. Dec. 3/24/11.) The court concluded that the prosecution had violated the state's disclosure rule by disclosing the arrest video on the first day of trial, but that the sanction requested (exclusion of testimony regarding the events at the time of arrest) was overly harsh given the opportunity for counsel to review the video prior to the officer's testimony. The court found no evidence that a recording of the booking existed, and arguments that the prosecution had the burden of explaining its nonexistence was waived. The court rejected the due process argument based upon the absence of a constitutional right to pretrial discovery. The court rejected any argument under *Brady v. Maryland*, 373 U.S. 83 (1963), because the material was disclosed in time to be used at trial, even though the delay may have impacted his trial preparations. The court rejected the confrontation argument because of the opportunity given to counsel to review the tape before cross-examining the officer. The court found no error in requiring admission of the recording to cross-examine the officer on it. The court rejected the stay issue as moot, and without merit. The court concluded that the misdemeanor DUI was a lesser included offense of the aggravated, felony DUI, and thus conviction on both was a violation of double jeopardy. Accordingly, the court vacated the conviction on the misdemeanor DUI, and otherwise affirmed Petitioner's convictions and sentence.

Petitioner sought review by the Arizona Supreme Court (Exhibit Q), challenging the trial court's failure to grant an extended continuance based on the belated disclosure of the arrest video. The Arizona Supreme Court summarily denied review on August 1, 2011. (Exhibit R, Mandate; Petition, Doc. 1, Exhibits at 205, Order 8/1/11.)

/ /

5

**C.      PROCEEDINGS ON STALKING CHARGE**

Petitioner proceeded to a trial to the court on May 19, 2010 in case CR2009-0700. (Exhibit V, M.E. 5/19/10.)  Petitioner was found guilty of the stalking charge, but not guilty on a charge of influencing a witness.  (Exhibit X, M.E. 6/4/10.)

On July 9, 2010, the trial court suspended sentence and placed Petitioner on 3 years probation, concurrent with his probation in the 2007 DUI case.   (Exhibit Z, Sentence 7/9/10.)

Petitioner did not seek any contemporaneous review of the conviction or sentence.

**D.      PROCEEDINGS ON 2009 DUI AND 2011 SEXUAL ASSAULT AND PROBATION VIOLATIONS, 2012 SENTENCE**

On November 24, 2009, Petitioner was indicted on the 2009 DUI.  (Exhibit BB, Indictment.)  The case languished.

On May 17, 2011, Petitioner was indicted on the 2011 sexual assault.  (Exhibit VVV, Indictment.)  Thereafter, on June 1, 2011, the prosecution moved (Exhibit DD) to amend the indictment on the 2009 DUI to allege prior felonies, and Petitioner's probation status at the time of commission.

Eventually, Petitioner entered into a consolidated written Plea Agreement dated September 1, 2011 (Exhibit DDDD), wherein Petitioner agreed to plead guilty to one count of aggravated DUI on the 2009 DUI, an amended count of sexual abuse in the 2011 sexual assault case, and the violation of his probation in the 2007 DUI and the stalking case.   The parties stipulated to presumptive terms on each of the new convictions, prison terms on the probation violations, but not to exceed five years each, and for all prison terms to run concurrently.  Petitioner agreed to withdraw or not file appeals or claims of ineffective assistance in the 2007 DUI.[2]  The parties further agreed that in the event of Petitioner's failure to appear at sentencing the agreements on

---

[2] Although arguing the general waiver resulting from a guilty plea, Respondents do not rely upon this explicit waiver in opposing the instant habeas Petition.  Accordingly, the undersigned does not address it.

sentencing would be waived.

The matter was set for sentencing on December 13, 2011, but Petitioner failed to appear.  (Exhibit EEEE, M.E. 12/13/11.)   Counsel then moved to withdraw based upon Petitioner's failure to maintain contact.  (Exhibit FFFF.)  Petitioner was apprehended, new counsel was appointed, and the matter reset for sentencing.  (Exhibit GGGG, M.E. 12/28/11.)  On April 5, 2012, Petitioner was sentenced to concurrent sentences of: (a) 5 years prison on the 2011 sexual abuse charge; (b) 4.5 years on the 2009 DUI; and (c) 2.5 years on each of the 2007 DUI charges.  In addition, Petitioner was sentenced to a consecutive sentence of .75 years on the stalking charge.  (Exhibit IIII, Sentence 4/5/12.) Consequently, Petitioner is serving an effective term of 5.75 years, less time served.

## E.    PROCEEDINGS ON DIRECT APPEAL FROM 2012 SENTENCE

Petitioner did not file a direct appeal from the 2012 sentence.  Moreover, as a pleading defendant, Petitioner had no right to file a direct appeal. *See* Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).

## F.    PROCEEDINGS ON POST-CONVICTION RELIEF ON 2012 SENTENCE

**In the PCR Court** - On May 25, 2012, Petitioner filed a Notice of Post-Conviction Relief (Exhibit JJJJ), challenging his 2012 sentence with respect to each of the various cases.  Counsel appeared (Exhibit KKKK), who eventually filed a Notice of No Colorable Issues (Exhibit LLLL), finding no viable issue for review, and seeking to withdraw.  Petitioner moved to appoint new counsel.  The motion was denied, and Petitioner was granted leave to file a *pro per* petition.[3]  (Exhibit MMMM, M.E. 4/5/13.)

On June 3, 2013, Petitioner filed his *pro per* Petition for Post Conviction Relief (Exhibit NNNN), raising a laundry list of claims of ineffective assistance of counsel

---

[3] In this ruling the Court referenced a *pro per* PCR petition filed May 23, 2012, and permitted Petitioner to either amend that petition or provide notice that he intended to rely upon it.  (Exhibit MMMM, M.E. 4/5/13.)  No copy of such petition has been provided by Respondents.  Because Petitioner eventually filed a new petition (Exhibit NNNN), the contents of that earlier petition, if any, are irrelevant.

against his attorneys in his various prosecutions for which he was sentenced in 2012.

Petitioner engaged in extended and vigorous litigation in the PCR proceeding, including moving for: (a) DNA testing (Exhibit UUUU); (b) reconsideration of the denial thereof and discovery of interviews of Petitioner's counsel, etc. (Exhibit XXXX; Exhibit LLLLLL); and (c) default judgment based on lack of a timely response (Exhibits AAAAA, DDDDD). The motions were denied. (Exhibit WWWW, Order 9/10/13; Exhibit MMMMMM, Order 10/9/13; Exhibit BBBBB, Order 1/22/14; Exhibit ZZZZ, Order 2/14/14; Exhibit KKKKKK, Order 2/14/14; and Exhibit EEEEE, Order 3/18/14.)

On February 11, 2014, the state filed its PCR Response (Exhibit OOOO).

On March 5, 2014, the PCR court found the claims of ineffective assistance to be without merit, and dismissed the petition. (Exhibit FFFFF, Order 3/5/14.)

On March 10, 2014, after the order dismissing his petition, Petitioner filed his PCR Reply (Exhibit GGGGG). On March 17, 2014, he moved to vacate the order of dismissal, and for leave to amend his PCR petition. (Exhibit HHHHH.) On May 30, 2014, the PCR court summarily denied the motion. (Exhibit JJJJJ, M.E. 5/30/14.)

**Attempted Appeal/Special Action** - On April 10, 2014, Petitioner filed with the Superior Court a notice of appeal, purportedly combined with a petition for special action, seeking review of the dismissal of his PCR petition without reviewing his reply. The notice was dated April 8, 2014. (Exhibit KKKKK.) (*See also* Petition, Doc. 1, Exhibits at 159, Notice of Filing.) Respondents do not address the disposition of this petition for special action. (*See* Answer, Doc. 26 at 48.)

**In the Arizona Court of Appeals** - Meanwhile, on July 24, 2014, Petitioner filed in the same case with the Arizona Court of Appeals, a Petition for Review (Exhibit OOOOO), seeking review of the denial of his PCR petition.

On July 25, 2014, the Arizona Court of Appeals construed the original filing as an appeal seeking review of orders on the motions for default and reconsideration, and dismissed the notice of appeal as appealing a non-appealable order. (Exhibit PPPPP, Order 7/25/14.)

Petitioner sought "clarification," arguing that the appellate court had misconstrued the order being appealed.  (Exhibit QQQQQ.)  He also moved to amend his cover page to reference the March 5, 2014 order disposing of the PCR petition.  (Exhibit RRRRR.) The appellate court denied, the motions finding that if the order being appealed was the March 5, 2014 order of dismissal, the appeal was untimely, and the court did not have jurisdiction to consider such an appeal.  (Exhibit TTTTT, Order 8/8/14.)

Petitioner then sought reconsideration, arguing that his notice of appeal had been filed within the 35 day time limit after the March 5, 2014 order.[4]  (Exhibit UUUUU.)  On August 29, 2014, the appellate court summarily denied the motion for reconsideration. (Exhibit VVVVV.)

On September 11, 2014, Petitioner filed a Petition for Review by the Arizona Supreme Court (Exhibit WWWWW). On February 17, 2015, the Arizona Supreme Court directed a response to the petition for review.  (Exhibit XXXXX, PFR Response at 5.) On April 14, 2015, the Arizona Supreme Court summarily denied review.  (Exhibit YYYYY.)

## G. PETITION FOR SPECIAL ACTION

On May 13, 2014, Petitioner filed with the Arizona Court of Appeals a Petition for Special Action (Exhibit LLLLL), challenging a laundry list of orders in his PCR proceeding on the 2012 sentence.  The Arizona Court of Appeals initially set a briefing schedule, but subsequently vacated that order and declined to accept jurisdiction over the petition.  (Exhibit MMMMM, Order 5/15/14.)

On or about June 17, 2014, Petitioner filed with the Arizona Supreme Court a Petition for Review in the special action proceeding.  (Petition, Doc. 1, Exhibits at 124.)

---

[4]  Petitioner argued that he had 35 days from the mailed order (Exhibit FFFFF) dismissing his PCR petition, relying on Arizona Rule of Criminal Procedure 1.3(a) providing for an additional five days after a notice by mailing.  However, 35 days from March 5, 2014 would have expired on April 9, 2014.  Petitioner's Notice of Appeal was not filed until April 10, 2014.

9

On October 20, 2014, the Arizona Supreme Court summarily denied review.  (*Id.* at 144.) Petitioner then sought reconsideration (*id.* at 145), which was denied (*id.* at 149).

## H.    FIRST MOTION TO CORRECT SENTENCE

On or about June 17, 2014, during the pendency of Petitioner's first PCR proceeding on the 2012 Sentence, Petitioner filed a "Request for Correction of Clerical Errors," challenging the consecutive nature of the .75 years sentence on the stalking charge, the lack of good time credits, and the imposition of two sentences of 2.5 years in the 2007 DUI.  (Petition, Doc. 1, Exhibits at 151.)  On July 22, 2014, the trial court amended the sentence by striking the portion of the 2012 sentence sentencing Petitioner to 2.5 years on the DUI charge based on his blood alcohol content.  (Exhibit BBBBBB, Order 7/22/14.)   Petitioner sought reconsideration of the partial denial (Exhibit CCCCCC), which was denied (Exhibit DDDDDD, Order 9/23/14).

## I.    SECOND PCR / MOTION TO CORRECT SENTENCE

On January 5, 2015, during the pendency of his petition for review with the Arizona Supreme Court on the appeal of his PCR petition on the 2012 Sentence, Petitioner filed a "Notice of Errors in the Record Arising from Oversight and Motion to Correct Errors in the Record"  (Exhibit EEEEEE), arguing that the 2007 DUI had been improperly used to enhance multiple sentences.   The motion was construed as a PCR petition under Rule 32, and was denied as untimely.  (Exhibit FFFFFF, Order 1/28/15.)

On February 18, 2015, Petitioner filed a Notice of Appeal (Exhibit GGGGGG) seeking to appeal the denial of the second PCR petition.

Respondents allege that "Petitioner subsequently voluntarily dismissed this appeal to avoid staying the instant habeas proceeding."  (Answer, Doc. 26 at 59.)  28 U.S.C. § 2248 provides:

> The allegations of . . . an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true, except to the extent that the judge finds from the evidence that they are not true.

10

Petitioner proffers nothing to counter this allegation, and the undersigned finds no reason to conclude that Respondents' allegation is untrue.

## J.   PETITIONER'S STATE COURT COUNSEL

Petitioner asserts a laundry list of claims of ineffective assistance, many of which are recursive claims of failures by PCR counsel to raise claims of ineffectiveness of trial and appellate counsel.  To assist in evaluating such claims, the undersigned provides the following recap of Petitioner's various counsel.

Attorney Kate **Roberts** represented Petitioner in the initial proceedings on the 2007 DUI, including cases CR2007-1075, CR 2009-0017, through the suspended sentence in that case, the January 14, 2010 sentence correction, and the Opening Brief on direct appeal.  (*See* Exhibit C, Notice of Appearance; Exhibit O, Correction of Sentencing; and Exhibit NNNNNN, Opening Brief.)   Roberts also represented Petitioner throughout the trial court proceedings on the 2009 Stalking case.  (*See* Exhibit V, M.E. 5/19/10; Exhibit Z, Sentence.)  Roberts also initially represented Petitioner in the earlier proceedings on the 2009 DUI case, CR2009-0960.   (*See* Exhibit EE, Notice of Substitution.)

Attorney Benjamin **Brewer** represented Petitioner in filing a Reply Brief on direct appeal in the initial 2007 DUI proceedings, including the Petition for Review to the Arizona Supreme Court.  (*See* Exhibit OOOOOO, Reply Brief; Exhibit Q, Pet. Rev.)  Brewer also succeeded attorney Roberts in representing Petitioner in the 2009 DUI case. (*See* Exhibit EE, Notice of Substitution.)

Attorney Ronald **Wood** and Attorney Dirk **LeGate** of the Wood Law Office succeeded Attorney Brewer as counsel for Petitioner in the 2009 DUI case, the 2011 Sexual Assault case, CR2011-0340, and the related probation violations.  (*See* Exhibit FFF, Notice of Appearance; Exhibit AAAA, M.E. 8/30/11; Exhibit TTT, M.E. 9/1/11.)  Following Petitioner's failure to appear for sentencing, the firm withdrew.  (*See* Exhibit FFFF, Mot. Withdraw.)  The Court then appointed the Public Defender's Office, which

11

reported a conflict, and so the Legal Defender's Office was appointed, who also reported a possible conflict.  (*See*  Exhibit GGGG, M.E. 12/12/11.)

Attorney Sam **Roser** was then appointed and represented Petitioner at sentencing on April 5, 2012.  (*See* Exhibit IIII, Sentence 4/5/12.)

Attorney Brett **Rigg** was appointed to represent Petitioner in his post-conviction relief proceedings following the April 5, 2012 sentence. (*See*   Exhibit KKKK, Not. Appear.)   He continued to do so through the Notice of No Colorable Issues (Exhibit LLLL).

## K.      PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 29, 2015 (Doc. 1). Petitioner's Petition asserts the following grounds for relief:

(1).  the following 39 instances of ineffective assistance of counsel:

(a).  by attorney **Roberts'** failure to:

1.  raise the double jeopardy violation in the 2007 DUI regarding the lesser included offense (Roberts IAC#1)

(b).  by attorney **Brewer's** failure to:

1.  raise in the 2009 DUI the double jeopardy violation in the 2007 DUI regarding the lesser included offense (Brewer IAC#1)

2.  call attorney Roberts to testify in the 2009 DUI case at the hearing regarding a violation of the right to confer with counsel (Brewer IAC#2)

3.  object in the 2009 DUI to introduction of the incomplete booking video (Brewer IAC#3)

4.  appeal or file post-hearing motions in the 2009 DUI from the denial of the motion to dismiss based on the failure to

12

disclose the booking video (Brewer IAC#4)

5. file charges of false imprisonment based on the double jeopardy violation in the 2007 DUI (Brewer IAC#5)

6. pursue in the 2009 DUI the misrepresentation of the time of the blood draw (Brewer IAC#6)

(c). by attorney **Wood's** failure to:

1. move to dismiss the 2011 sexual assault for lack of evidence or witnesses (Wood IAC#1)

2. move to suppress all evidence in the 2011 sexual assault (Wood IAC#2)

3. move to suppress evidence in the 2011 sexual assault based on an illegal search (Wood IAC#3)

4. move to dismiss the 2011 sexual assault based on the lack of a victim (Wood IAC#4)

5. move to dismiss the 2011 sexual assault based on the lack of witnesses (Wood IAC#5)

6. move to dismiss the 2011 sexual assault based on other grounds unknown to Plaintiff (Wood IAC#6)

7. move to dismiss the 2011 sexual assault based on the lack of DNA evidence  (Wood IAC#7)

8. move to dismiss the 2009 DUI based on the use of the booking video in violation of a court order  (Wood IAC#8)

9. move to suppress the booking video in the 2009 DUI (Wood IAC#9)

10. move to admit in the 2009 DUI the "new video" (Wood IAC#10)

11. move to vacate orders in the 2009 DUI based on the complete booking video  (Wood IAC#11)

13

12. move to dismiss the 2009 DUI based on the violation of the right to counsel  (Wood IAC#12)

13. move to suppress in the 2009 DUI the blood evidence based on the timing of the draw of blood  (Wood IAC#13)

14. move to dismiss the 2009 DUI based on police tampering with evidence  (Wood IAC#14)

15. move to dismiss the 2009 DUI based on forging of the time of the blood draw  (Wood IAC#15)

16. move to dismiss the 2009 DUI based on denial of a right to an independent blood test  (Wood IAC#16)

17. move to dismiss the 2009 DUI based upon the presentation of the booking video  (Wood IAC#17)

18. move to dismiss the 2009 DUI based on commission of a criminal simulation  (Wood IAC#18)

19. move to dismiss the 2009 DUI based on perjury by the police  (Wood IAC#19)

20. move to dismiss the 2009 DUI based on the police's commission of criminal damage  (Wood IAC#20)

21. move to dismiss the 2009 DUI based on failure to disclose DNA evidence  (Wood IAC#21)

22. refrain from coercing Petitioner into a guilty plea by showing him email from the prosecution  (Wood IAC#22)

23. obtain DNA test results in the 2011 sexual assault before allowing Petitioner to plead guilty (Wood IAC#23)

(d). attorney **Roser's** failure to:

1. raise of a claim of double jeopardy as to the 2007 DUI and the 2009 DUI (Roser IAC#1)

2. call character witnesses at sentencing in the 2009 DUI/2011

14

sexual assault sentencing (Roser IAC#2)

3. read the presentence report and verify its contents before sentencing in the 2009 DUI/2011 sexual assault (Roser IAC#3)

4. compare the presentence report with the plea agreement in the 2009 DUI/2011 sexual assault and object to the use of the additional charges in Case 2009-0017 in the 2007 DUI as a sentence enhancement  (Roser IAC#4)

5. correct sentencing errors in the plea agreement in the 2009 DUI/2011 sexual assault admitting the probation violations (Roser IAC#5)

6. ensure the sentencing minute entry in the 2009 DUI/2011 sexual assault reflected the vacation of his misdemeanor conviction in the 2007 DUI (Roser IAC#6)

7. object in the 2009 DUI/2011 sexual assault to the imposition of a consecutive prison term for the 2009 DUI, in violation of the plea agreement (Roser IAC#7)

8. object in the 2009 DUI/2011 sexual assault to incorrect sentencing ranges (Roser IAC#8)

9. raise claims in the 2009 DUI/2011 sexual assault regarding the two prison terms on the 2007 DUI (Roser IAC#9)

(2). 9 instances of violation of Petitioner's double jeopardy protections, including[5]:

(a). imposition in the 2007 DUI of consecutive 4 month prison

---

[5] Respondents discern (Answer, Doc. 26 at 68) a tenth double jeopardy claim, they denominate as Ground 2J and construed as replicating the double jeopardy claim raised in his appeal from his PCR proceeding (Exhibit SSSSS at 3).  The undersigned does not discern a claim separate from those asserted in Ground 2A through 2I, and finds the referenced language from the Petition as simply a summary of his double jeopardy claims.

terms as a condition of probation

(b).  Petitioner's service of an additional month in prison as a result of the consecutive 4 month sentences in the 2007 DUI

(c).  sentencing in the 2007 DUI on the lesser included offense misdemeanor

(d).  multiplicitous charges in the 2009 DUI

(e).  imposition in the 2012 sentence of two consecutive 2.4 year sentences (later vacated)

(f).  denial of his motion to reconsider and request to withdraw from the plea agreement in the 2009 DUI/2011 sexual assault

(g).  the determination that his 2014 notice of appeal was untimely

(h).  use in the 2009 DUI/2011 sexual assault of a violation of probation in the 2007 DUI based on case CR2009-0017, when that case number was not listed in the petition to revoke probation

(i).  sentencing in the 2009 DUI/2011 sexual assault as a repeat offender based on the vacated misdemeanor conviction

(3).  3 instances of denial of due process in Petitioner's PCR proceeding in the 2009 DUI/2011 sexual assault, including

(a).  the PCR court ruling on his PCR petition when the time for filing a petition had not elapsed because the transcripts had not all been received

(b).  the PCR court ruling on his PCR petition before the time for a reply elapsed

(c).  the PCR court allowing the state to interview prior counsel based on an implicit waiver of his attorney-client privilege;

(4).  denial of due process in the 2009 DUI/2011 sexual assault by a conviction based on a forged and tampered with booking video;

16

(5).  denial of Petitioner's First Amendment rights from refusal to hear Petitioner's appeal from the denial of his PCR petition in the 2009 DUI/2011 sexual assault;

(6).  denial of due process in the 2009 DUI from use of falsified evidence of the time of Petitioner's blood draw;

(7).  denial of due process in the 2011 sexual assault from refusal to permit DNA testing;

(8).  denial of due process in the 2009 DUI/2011 sexual assault from failure of counsel to acquire recordings, and the trial court's refusal of an opportunity to depose attorney Roberts as to the denial of a right to counsel by recording conversations with Roberts regarding the 2007 DUI and the 2009 DUI;[6]

(9).  denial of due process in the 2009 DUI/2011 sexual assault by use of a stale prior to enhance Petitioner's sentence; and

(10).  cumulative error[7]

**Response** - On August 6, 2015, Respondents filed their Response ("Answer") (Doc. 26, 27).  Respondents argue that the claims they have denominated as "Rigg IAC #1," and Grounds 2G, 3A, 3B, 3C, 5, 7, 8A, and 10 are not cognizable because based upon violations in Petitioner's PCR proceeding.  (Doc. 26 at 69-74.)  Respondents argue that Grounds 2B, 2H, 2G, 3A, 3B, 3C, 5, 7, 8A, 9 and 10 are not cognizable because they allege only state law violations.  (*Id.* at 74-81.)  Respondents argue that all of Petitioner's

---

[6] Respondents discern two separate claims in Ground 8.  The first is the claim identified in the service Order, and referenced herein, based on the recording of conversations with attorney Roberts in the 2009 DUI (denominated as "Ground 8A") and a separate claim (denominated as "Ground 8B") founded upon conversations regarding the 2007 DUI. Respondents argue that the claim based on the 2007 DUI was not previously asserted by Petitioner in his motion to dismiss the 2009 DUI. (Answer, Doc. 26 at 69.)  Like Judge Campbell, the undersigned discerns a single claim, albeit founded upon both sets of events, but directed at the action of counsel and the court in the 2009 DUI/2011 sexual assault case.

[7] Ground 10 is found at page 19 of the Petition (Doc. 1) between Grounds 5 and 6.

grounds are procedurally defaulted or were procedurally barred on an independent and adequate state ground.  (*Id.* at 81-157.)

**Reply** - On September 9, 2015, Petitioner filed a Reply (Doc. 29).  Petitioner argues his *pro se* status as cause to excuse his procedural defaults (*id.* at 6-7); the summary ruling of the Arizona Supreme Court indicates a rejection of the untimeliness determination (*id.* at 8); his petition for review was not untimely because he was entitled to application of the state's prison mailbox rule (*id.*); the bias against Petitioner in the state proceedings constitutes cause (*id.* at 9); double jeopardy claims are jurisdictional (*id.* at 10); the requested DNA testing will establish Petitioner's actual innocence (*id.* at 11); PCR counsel was ineffective in failing to raise the sentencing errors on which relief was granted to Petitioner (*id.* at 12); counsel was ineffective in failing to raise the double jeopardy claims (*id.* at 12-13); trial counsel were ineffective (*id.* at 13-15); the requirement that he file his PCR petition without transcripts constitutes cause (*id.* at 16); that he can raise his claims of ineffectiveness of PCR counsel in  a second PCR petition (*id.* at 38); that Respondents have waived any response on the merits by presenting a limited answer (*id.* at 39); that incorporation of earlier arguments by reference is adequate argument (*id.* at 43); and that his guilty plea did not render any errors moot (*id.* at 44).  Petitioner argues throughout that he fairly presented his claims to the state courts, and that his claims are meritorious.

**Motions** – On September 9, 2015, Petitioner filed a Motion for Disclosure of Evidence (Doc. 30) and a Motion for Evidentiary Hearing (Doc. 31).  Respondents have not responded to either motion.

Because the resolution of the motions is dependent upon various determinations on the viability of Petitioner's claims, the motions are addressed herein.

## III.    APPLICATION OF LAW TO FACTS

### A.    EXHAUSTION, PROCEDURAL DEFAULT AND PROCEDURAL BAR

Respondents argue that all of Petitioner's claims are either procedurally defaulted

18

or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.

### 1.    **Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982). No exception has been recognized for purportedly "jurisdictional" claims.

Ordinarily, to exhaust his state remedies, the petitioner must have fairly presented his federal claims to the state courts.  "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Proper Vehicle** - Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th

Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

**Factual Basis** – A petitioner must have fairly presented the operative facts of his federal claim to the state courts as part of the same claim.  A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts.  Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983).  And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995).  While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).  "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal

20

claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

**Fair Presentation** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).  *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).

### 2.   **Procedural Default**

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 26 at 90.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.   Moreover, as a pleading

defendant, Petitioner has no right to a direct appeal, at least on those convictions founded upon a guilty plea.  *See* Ariz.R.Crim.P. 17.1(e); and *Montgomery*, 181 Ariz. at 258, 889 P.2d at 616.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right."  Id.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective

assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  That time has long since passed.

Petitioner argues in his Reply that he could still seek a second PCR proceeding to assert claims of ineffective assistance of counsel in his first PCR proceeding.  (Reply, Doc. 29 at 38.)  While that might be true, such claims must be brought within the time limits of Rule 32.4, and that time has run.  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).

Exceptions - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  *See* Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.

(3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.

f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or

g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

**3.     Procedural Bar on Independent and Adequate State Grounds**

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds. "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a

state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin,* 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

**4.    Application to Petitioner's Claims**

Here, Petitioner has made four forays to the Arizona Court of Appeals: (1) his direct appeal from his original sentence in the 2007 DUI (Exhibit NNNNNN); (2) his appeal from his PCR regarding his 2012 sentence (Exhibits KKKKK and OOOOO); (3) his petition for special action (Exhibit LLLLL); and (4) his notice of appeal in his second PCR from the 2012 sentence (Exhibit GGGGGG).

Petitioner also points to a variety of motions for reconsideration and the like, briefs to the trial/PCR court, briefs to the Arizona Supreme Court, etc. as sources of his fair presentation of claims.  As noted above, it is not sufficient that somewhere in the proceedings a Petitioner has raised his arguments.  Rather, such arguments must be properly raised in the context of the original proceeding.  Claims raised for the first time in such motions are not fairly presented. *Ferrell v. Ryan*, 2014 WL 3610955, at *12 (D. Ariz. 2014) report and recommendation adopted, 2015 WL 1755403 (2015) (citing *Roettgen*, 33 F.3d at 38).

/ /

/ /

/ /

### a)       Insufficient Presentation

#### (1)       Incorporation by Reference

Petitioner asserts that various claims were fairly presented by incorporating by reference portions of briefs in the trial/PCR courts, etc.    Such references are not fair presentation of a claim, *see Baldwin*, 541 U.S. at 32 and *Castillo*, 399 F.3d at 1000, unless the other brief has been provided to the appellate court with the appellate brief, *Insyxiengmay*, 403 F.3d at 668-669.  *See also* Ariz. R. Crim. P. 32.9(c) ("The petition shall not incorporate any document by reference, except the appendices.").

#### (2)       Motions, Etc.

Petitioner argues that he has raised his claims in various motions for reconsideration, motions to vacate, ungranted motions to amend, etc.  None of these are fair presentation of an issue.  *See Greene v. Lambert*, 288 F.3d 1081, 1087 (9th Cir. 2002) (raising for first time in discretionary motion for reconsideration not fair presentment unless actually considered); and Ariz. R. Crim. P. 32.9(c) ("Failure to raise any issue that could be raised in the petition or the cross-petition for review shall constitute waiver of appellate review of that issue.").

#### (3)       PCR/Trial Court

Petitioner also points to his presentation of various claims in the trial and PCR courts.  It is true that most claims must be preserved by raising in the trial and/or PCR court.  But such presentation is not enough.  Rather, the Petitioner must have also presented them to the Arizona Court of Appeals.  *See Castillo*, 399 F.3d at 998.

#### (4)       Notice of Appeal/Special Action from PCR proceeding

Following the denial of his PCR petition in the 2012 proceeding, Petitioner filed with the superior court a "Notice of Appeal from Superior Court and an Application for

26

an Extraordinary Writ of Special Action."  (Exhibit KKKKK.)  The Arizona Rules of Criminal Procedure do not permit an appeal from a PCR proceeding, but instead provide for a discretionary petition for review to the appellate court.  *See State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996); and Ariz. R. Crim. P. 32.9.  Further, to the extent that this filing constituted a petition for special action, it was presented only to the Superior Court, and not to the Arizona Court of Appeals, and thus would not have qualified as presentation to the state's highest court.  Moreover, as discussed hereinafter, a petition for special action is seldom fair presentation of a claim.

### (5)   Arizona Supreme Court

Finally, Petitioner argues that he raised various claims to the Arizona Supreme Court.  However, presentation for the first time to the Arizona Supreme Court is not fair presentation.

In *Casey v. Moore*, 386 F.3d 896 (9th Cir. 2004), the court reiterated that to properly exhaust a claim, "a petitioner must properly raise it on every level of direct review." *Id*. at 916.

> Academic treatment accords: The leading treatise on federal habeas corpus states, "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."

*Id*. (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998) (emphasis added)).

The presentation of a claim for the first time in a petitioner's petition for review to the Arizona Supreme Court is not sufficient to fairly present the claim to the Arizona courts.  The Arizona Supreme Court generally will not consider issues raised for the first time before it, although it has the discretion to do so. *See Town of South Tucson v. Board of Supv'rs of Pima County*, 52 Ariz. 575, 84 P.2d 581 (1938).  Raising "federal constitutional claims for the first and only time to the state's highest court on discretionary review" is not fair presentation.  *Casey*, 386 F.3d at 918.

(Neither is such presentation necessary, except in death penalty (or, perhaps, life sentence) cases. *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005).)

### (6)    Actual Consideration

Nonetheless, even if a Petitioner has not fairly presented a claim, actual consideration of the claim by the Arizona Court of Appeals or Arizona Supreme Court satisfies the exhaustion requirement.

A state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).

### b)    Claims Exhausted in Direct Appeal

Petitioner's direct appeal from the original sentence in the 2007 DUI presented none of the claims he now raises.

Petitioner did raise various claims related to the failure of the prosecution to disclose various videos.    (Exhibit NNNNNN, Opening Brief at 8-16.)  Although Petitioner now raises related claims of ineffective assistance of counsel in Ground One, the presentation of an underlying claim is not fair presentation of a related claim of ineffective assistance.  "While [the ineffective assistance and underlying constitutional claim are] admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts." *Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005).

Petitioner also raised a claim based on the failure to stay the prison term imposed as a condition of probation.  (Exhibit NNNNNN, Opening Brief at 16-18.)  However, Petitioner does not raise the same claim herein.

It is true that the Arizona Court of Appeals *sua sponte* concluded that his double

jeopardy rights had been violated by conviction on a greater and lesser included offense, and vacated his conviction on the misdemeanor DUI in Case CR 2007-1075, pertaining to the 2007 DUI.  (Exhibit P, Mem. Dec. 3/24/11 at 15-17.)   In Ground Two, Petitioner alleges violations of his double jeopardy rights, but focuses upon the imposition of two four month prison terms as a condition of probation on the two felony charges in Case 2009-0017, pertaining to the 2007 DUI.  (Petition, Doc. 1 at 11 ("7").)  He also argues that the 2012 sentence resulted in various double jeopardy violations.  (*Id.* at 11-13.)  But those violations could not have been considered by the Arizona Court of Appeals in its 2011 Memorandum Decision (Exhibit NNNNNN).

Accordingly, Petitioner's direct appeal from the 2007 DUI cases did not result in the exhaustion of any of his current claims.

### c)   Claims Exhausted in Attempted Appeal of PCR Rulings

Petitioner's next foray to the Arizona Court of Appeals was his "Notice of Appeal from Superior Court and an Application for an Extraordinary Writ of Special Action" from his first PCR proceeding following the 2012 sentence.[8]   (Exhibit KKKKK.)  Petitioner eventually filed in that proceeding an "Appellant's Brief" alternatively labelled as a "Petition for Review" (Exhibit OOOOO).  However, those filings were not a fair presentation of Petitioner's claims.

The culmination of the rulings of the Arizona Court of Appeals was: (1) to the extent Petitioner sought review of the rulings on his motion for default and motion for reconsideration, it improperly sought review of non-appealable orders; and (2) to the extent that Petitioner sought review of the March 5, 2014 order dismissing the PCR petition, it was an untimely appeal.  (*See* Exhibit PPPPP, Order 7/25/14; Exhibit TTTTT, Order 8/8/14.)

Petitioner proffers nothing to counter the effect of the ruling with regard to the

---

[8] To the extent that this filing constituted a petition for special action, as discussed hereinafter, a petition for special action is not fair presentation of a claim.

non-appealable orders.

With regard to the untimeliness, Petitioner argues that the filing was timely, because he was entitled to the application of Arizona's prison mailbox rule.  Indeed, Arizona generally treats prisoner filings delivered to prison officials for mailing as being filed "'at the time it is delivered, properly addressed, to the proper prison authorities to be forwarded to the clerk of the superior court.'"  *State v. Goracke*, 210 Ariz. 20, 22, 106 P.3d 1035, 1037 (App. 2005) (quoting *Mayer v. State*, 184 Ariz. 242, 245, 908 P.2d 56, 59 (App.1995)).   Petitioner presents various documents to show that he mailed documents to the Navajo County Superior Court on March 27, 2014 and April 4, 2014, (Reply, Doc. 29 at Exhibits, Cook Unit Legal Log), even though his filing was dated April 8, 2014 and not received by the court until April 10, 2014.  (*See* Exhibit KKKKK.)

Petitioner invites this Court to conclude that the decision of the Arizona Court of Appeals was in error.  In almost every situation, a state court determination of state law is not subject to review in a federal habeas court.  *Bains v. Cambra*, 204 F.3d 964, 971 (9th Cir. 2000) ("federal court is bound by the state court's interpretations of state law").  Petitioner proffers no authority for this Court to undertake to review of a state court ruling on the application of a state time limit.

Moreover, even assuming this Court could substitute its judgment for that of the Arizona Court of Appeals on the timeliness of Petitioner's appeal, Petitioner fails to convince this Court that he timely mailed his "Notice of Appeal."

Petitioner's argument is unavailing for two reasons: (1) his April, 2014 filing was a delinquent notice of appeal; and (2) his July, 2014 "Petition for Review" was a delinquent petition for review.

**April 2014 Filing was Delinquent Notice of Appeal** - The Arizona Rules of Criminal Procedure do not permit an appeal from a PCR proceeding, but instead provide for a discretionary petition for review to the appellate court.  *See State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996); and Ariz. R. Crim. P. 32.9.  Rule 32.9 does not provide for filing a notice of appeal, but requires the filing of a complete petition for

1   review, and provides that claims not included in the petition are waived.  Ariz. R. Crim.
2   P. 32.9(c)(1).

3        A notice of appeal is only provided for under Arizona Rule of Criminal Procedure
4   31.2, relating to an appeal from a judgment and sentence. *See also* Ariz. Rev. Stat. § 13-
5   4033.

6        Nonetheless, Petitioner purported to file a "Notice of Appeal."   (Exhibit
7   KKKKK.)   Moreover, Petitioner filed his "Notice of Appeal" with the trial court.
8   Arizona law requires that "[t]he petition for review…shall be filed in the appellate court."
9   Ariz. R. Crim. P. 32.9(c).

10       It is apparent that the Arizona Court of Appeals honored that election.   The
11  Arizona Court of Appeals' Order of Dismissal (Exhibit PPPPP) references the parties as
12  "Appellee" and "Appellant," described Petitioner's filing as "purport[ing] to appeal,"
13  and finding the orders referenced (the motion for default and motion for reconsideration)
14  "not appealable," citing Ariz. Rev. Stat. § 13-4033, which defines the types of orders
15  which are appealable, and denying a right of appeal to pleading defendants.

16       Similarly, the court's order on Petitioner's Motion for Clarification (Exhibit
17  QQQQQ), even after Petitioner filed his "Appellant's Brief"/"Petition for Review"
18  (Exhibit OOOOO), continued to refer to the parties as "Appellee" and "Appellant," and
19  the April 10, 2014 filing as a "notice of appeal." (*See* Exhibit TTTTT, Order 8/8/14.)
20  Likewise, the court's order (Exhibit VVVVV) on Petitioner's Motion for
21  Reconsideration (Exhibit UUUUU).

22       The deadline for a notice of appeal was 60 days after entry of judgment and
23  sentence.[9]  Ariz. R. Crim. P. 31.3.  Of course, that time had long since passed, Petitioner
24  having been sentenced on April 5, 2012. (*See* Exhibit IIII, Sentence.)   Thus, whether
25  treated as filed on April 8, 2014, April 4, 2014, or March 27, 2014, this notice of appeal
26  was almost two years delinquent.

27
28  [9] Rule 31.3 was amended effective January 1, 2015 to reduce the time for a notice of appeal from 60 days to 20 days.

31

**July, 2014 Filing was Delinquent Petition for Review** – Petitioner eventually filed a petition for review with the Arizona Court of Appeals on July 24, 2014.  (Exhibit OOOOO.)

Under Arizona Rule of Criminal Procedure 32.9(c), Petitioner had 30 days from the final decision on the PCR Petition or a motion for rehearing, to file his petition for review.  Arizona has broadly applied its rule expanding time limits by five days after service by mail, Arizona Rule of Criminal Procedure 1.3(a), to include time limits running from the issuance of court orders. *See e.g State v. Rabun*, 162 Ariz. 261, 782 P.2d 737 (1989) (applying Rule 1.3(a) to Rule 31.3 deadline for notices of appeal); *State v. Savage*, 117 Ariz. 535, 573 P.2d 1388 (1978) (applying Rule 1.3(a) to Rule 32.9(c) deadline for petition for review from denial of motion for rehearing in PCR proceeding); and *State v. Zuniga*, 163 Ariz. 105, 786 P.3d 956 (1990) (citing applying Rule 1.3 to time for notice of appeal delivered to attorneys' courthouse internal mailbox).  Here, the PCR court's ruling was issued from chambers by mail. (*See* Exhibit FFFFF, Order 3/5/14.) Accordingly, Petitioner had 35 days, or until Wednesday, April 9, 2014 to file a petition for review.

Alternatively, the deadline runs from the order on a motion for rehearing.  Ariz. R. Crim. P. 32.9(c).  Here, Petitioner did not file anything denominated as a "motion for rehearing."  He did, however, file a "Motion to Vacate Ruling Upon Reconsideration and Motion for Leave to Amend Rule-32-Petition."  (Exhibit HHHHH.)  That filing argued that the order of dismissal should be vacated because the PCR court had improperly refused transcripts, required a PCR petition before transcripts were available, and ruled without awaiting a reply.  That motion was filed on March 17, 2014, within the 15 day time limit of Rule 32.9(a) for motions for rehearing.  Assuming this motion qualified as a motion for rehearing, Petitioner's deadline to file a petition for review did not expire until 30 days after the Court ruled on that filing on May 30, 2014, or until Monday, June 30, 2014.  (*See* Exhibit JJJJJ, Order 5/30/14.)

Thus, at best, Petitioner had until June 30, 2014 to file a petition for review.  But,

1   Petitioner did not file anything even denominated as a petition for review until July 24,

2   2014.  (*See* Exhibit OOOOO.)  That filing was untimely.

3       **Conclusion of Procedural Bar** - Accordingly, any claims that Petitioner did raise

4   in his 2014 proceeding before the Arizona Court of Appeals were properly barred from

5   review on state grounds of non-appealability and/or untimeliness.[10]   Petitioner proffers

6   nothing to show that that either of these grounds were not independent and adequate state

7   grounds.  Consequently, any of Petitioner's federal claims raised in that proceeding were

8   procedurally barred, and thus precluded from habeas review.

9

10          **d)      Claims Exhausted in Special Action**

11      Petitioner purported to combine his "Notice of Appeal" with a petition for special

12   action (Exhibit KKKKK).  But Petitioner filed that purported petition with the trial court

13   not the Arizona Court of Appeals.

14      He did ultimately file with the Arizona Court of Appeals a separate Petition for

15   Special Action (Exhibit LLLLL).  That filing was not fair presentation.

16      "Submitting a new claim to the state's highest court in a procedural context in

17   which its merits will not be considered absent special circumstances does not constitute

18   fair presentation."  *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille

19   v. Peoples*, 489 U.S. 346, 351 (1989)).    The Arizona special action proceeding is just

20   such a discretionary proceeding.

21      It is true that a petition for special action is the appropriate vehicle to obtain

22   Arizona judicial appellate review of an interlocutory double jeopardy claim.  *See State v.

23   Moody*, 208 Ariz. 424, 437, 94 P.3d 1119, 1133 (Ariz. 2004) (citing *Nalbandian v.

24   Superior Court In and For County of Maricopa*, 163 Ariz. 126, 130, 786 P.2d 977, 981

25   _____

26   [10]   Because the Arizona Supreme Court issued a summary denial of review on
       Petitioner's Petition for Review to that court (*see*  Exhibit YYYYY, Order 4/14/15), this
27   Court would look through that rejection to the last reasoned opinion, that by the Arizona
       Court of Appeals.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).   Petitioner argues
28   in his Reply, but fails to explain why, this rule would not apply to the summary dismissal
       by the Arizona Supreme Court.  The undersigned concludes that it does.

(Ariz. Ct. App. 1989)).  "The reasons underlying the preference for special action review of denials of motions to dismiss based on double jeopardy are obvious: Because the Double Jeopardy Clause guarantees the right to be free from subsequent prosecution, the clause is violated by the mere commencement of retrial."  *Id.*  Although Petitioner has raised a variety of double jeopardy claims, Petitioner has not asserted an interlocutory double jeopardy challenge.  Rather, his special action filings were all made after his prosecutions had been completed.

Consequently, Petitioner's special action petition(s) were not fair presentation of any claims.  Moreover, in neither proceeding did the state courts address his special action claims.  (*See* Exhibits PPPPP, TTTTT, and VVVVV (orders on Notice of Appeal), and MMMMM (Order 5/15/14 on Special Action).  Consequently, the claims cannot found to have been exhausted despite the lack of fair presentation.

### e)   Claims Exhausted in Second PCR Petition for Review

Petitioner initiated a second PCR proceeding when he filed a "Notice of Errors" on January 5, 2015 (Exhibit EEEEE).  That proceeding was dismissed as untimely.

Petitioner then filed a "Notice of Appeal" (Exhibit GGGGGG), which he then dismissed.  Petitioner proffers no reason to conclude that this aborted proceeding resulted in the fair presentation or actual review of any of his claims.

### f)   Conclusion

Based upon the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on, or has been procedurally barred on independent and adequate state grounds, on all of his claims.

## 5.   Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain

federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner argues that this Court should find cause to excuse his procedural defaults based on: (1) his indigent, untrained, *pro se* status and his resulting entitlement to the liberal construction of his filings (Reply, Doc. 29 at 6); (2) his claims are meritorious (*id.* at 7); (3) there was bias against Petitioner in the state court proceedings; (4) he was required to file his PCR petition without transcripts; and (4) his trial, appellate and PCR counsel were ineffective.

**_Pro Se_ Status** - The "cause and prejudice" standard is equally applicable to pro se litigants, *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990); *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986), whether literate and assisted by "jailhouse lawyers", *Tacho*, 862 F.2d at 1381; illiterate and unaided, *Hughes*, 800 F.2d at 909, or non-English speaking.  *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (9th Cir. 1988), cert. denied, 490 U.S. 1100 (1989).  Thus, the fact that Petitioner was unaided at various points in his proceedings does not establish cause to excuse his procedural defaults and procedural bars.

**Merits of Claims** – Petitioner argues his claims are meritorious and thus must not be disposed of on technicalities.  The Supreme Court has acknowledged that the

procedural default rules must not be applied so as to result in a "fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. 478, 495 (1986). Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.). The Ninth Circuit has expressly limited it to claims of actual innocence. *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008). Accordingly, the potential that Petitioner's claims might be meritorious is not sufficient to avoid the procedural default rules.

**Bias in State Proceedings** – In his Reply, Petitioner argues there was bias in favor of the lawyers because the state courts permitted the prosecution and PCR counsel to file papers after the deadlines, but then dismissed his PCR appeal as untimely. (Reply, Doc. 30 at 9.) But Petitioner fails to show how any purported prejudice resulted in his failure to fairly present his claims and exhaust his state remedies. Even assuming that the PCR court had wrongly extended deadlines for the state and Petitioner's counsel, improperly permitting a seriously delinquent appeal by Petitioner would not have been authorized, nor would such exception have rectified the earlier bias. *See State v. Littleton*, 146 Ariz. 531, 533, 707 P.2d 329, 331 (App. 1985) ("The filing of a timely notice of appeal is essential to the exercise of jurisdiction by this court."). (*See* Exhibit TTTTT, Order 8/8/14, citing *Littleton*.)

**Lack of Transcripts** – Petitioner also argues in his Reply that he was required to file his PCR petition by June 1, 2013, even though Petitioner did not have any transcripts. However, Petitioner fails to proffer anything to show that a lack of transcripts cause Petitioner's procedural defaults. Indeed, as discussed hereinafter in addressing the ineffectiveness of PCR counsel under *Martinez*, Petitioner presented all but five of his claims in his PCR petition. He makes no suggestion that those five claims could not be presented due to a lack of transcripts, and none appear dependent upon the availability of transcripts.

Moreover, Petitioner eventually filed a request for transcripts from the PCR court (Exhibit PPPP), along with his other discovery requests.  The court granted the request, directing the provision of transcripts from the change of plea and sentencing.  (Exhibit QQQQ, M.E. 7/10/13.)  Petitioner proffers nothing to suggest that he did not receive those transcripts, and did not subsequently seek to amend his petition to allege new claims.  Thus, it appears that the lack of transcripts was not the cause of Petitioner's failure to assert those additional claims.

**Ineffective Assistance** – Petitioner asserts that trial, appellate, and PCR counsel have been ineffective in failing to pursue various claims and issues.

The undersigned addresses separately hereinafter the claim of ineffective assistance of PCR counsel Rigg.

Ineffective assistance of trial and appellate counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  However, "[t]o constitute cause for procedural default of a federal habeas claim, the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003).  As with his other claims, Petitioner has not properly exhausted his state remedies on any claims of ineffective assistance of trial or appellate counsel.  Consequently, he cannot rely upon any ineffectiveness of trial or appellate counsel as cause to excuse his procedural defaults.

**Summary re Cause and Prejudice** – Based upon the foregoing (but without consideration of the purported ineffectiveness of PCR counsel under *Martinez*), the undersigned concludes that Petitioner has failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his

procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

**6.**     **Ineffective Assistance of PCR Counsel as Cause**

    **a)**     **Ineffectiveness of PCR Counsel Ordinarily Not Cause**

        Ordinarily, to meet the "cause" requirement, the ineffective assistance of counsel must amount to an independent constitutional violation.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  Accordingly, where no constitutional right to an attorney exists, ineffective assistance will not amount to cause excusing the state procedural default.  Id. "Ineffective assistance of counsel can constitute cause to excuse a procedural default only if the petitioner had a constitutional right to counsel in the proceeding in which the default occurred…The fact that counsel is appointed by the state court does not change the result, because counsel is not constitutionally required."  *Smith v. State of Idaho*, 392 F.3d 350, 357 (9th Cir. 2004) (emphasis in original, citations omitted).  If there is no federal constitutional right to counsel, a petitioner "cannot establish cause because of the state trial court's failure to appoint him counsel, even if such failure was erroneous as a matter of state law."  *Smith*, 392 F.3d at 357.  In *Patrick Poland v. Stewart*, 169 F. 3d 573 (9th Cir. 1999), the Ninth Circuit held that "[b]ecause there is no right to an attorney in state post-conviction proceedings, there cannot be constitutionally ineffective assistance of counsel in such proceedings."  *Id*. at 588 (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)).

        The Supreme Court has recognized two exceptions to the general rule that ineffectiveness of PCR counsel is not cause.

    **b)**     **Exception for Abandonment without Notice**

        The first exception was recognized in *Maples v. Thomas*, 132 S.Ct. 912 (2012), where the Supreme Court held that cause could be shown when PCR counsel was not merely negligent (and under the law of agency that negligence being chargeable to the

petitioner) but had abandoned the representation without notice to the petitioner, resulting in the loss of his state remedies.

Here, however, Petitioner does not suggest that counsel abandoned the representation without notice, merely that counsel was deficient in not bringing claims Petitioner asserts are meritorious.  Indeed, counsel filed the appropriate notice to the PCR court when he was unable to find an issue of review. Thus, any such deficiency was not external to the defense, and is chargeable to Petitioner.

### c)    Exception for Claims re Ineffectiveness of Trial & Appellate Counsel

The second exception to the general rule that ineffectiveness of PCR counsel does not establish cause concerns the failure of PCR counsel to bring claims of ineffective assistance of trial and appellate counsel.

In *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), the Court recognized that because courts increasingly reserve review of claims of ineffective assistance of trial counsel to post-conviction relief proceedings, the ineffectiveness of counsel in such PCR proceedings could effectively defeat any review of trial counsel's ineffectiveness. Accordingly, the Court recognized a narrow exception to the Court's ruling in Coleman, supra, that the ineffectiveness of PCR counsel cannot provide cause.  Arizona, the state at issue in *Martinez*, is just such a state, and accordingly ineffective assistance of PCR counsel can establish cause to excuse a procedural default of a claim of ineffective assistance of trial counsel.  In *Ha Van Nguyen*, 736 F.3d 1287 (9th Cir. 2013), the Ninth Circuit extended *Martinez* to PCR counsel's ineffectiveness in failing to bring claims of ineffective assistance of appellate counsel.

However, the *Martinez* court made clear that the limited exception it was creating for ineffectiveness of PCR counsel as "cause" did not extend outside the initial PCR proceeding.

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings,

39

and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Martinez*, 132 S.Ct. at 1320.

Further, *Martinez* only applies to the important "right to the effective assistance of trial counsel," 132 S.Ct. at 1320, and appellate counsel, *Nguyen*, 736 F.3d 1287. Accordingly, Petitioner's complaint that PCR counsel was ineffective for failing to assert other types of claims cannot establish cause.

### d)      Exhaustion of *Martinez* Claims Not Required

Respondents argue that *Martinez* did not disturb the requirement to exhaust claims of ineffective assistance used as cause to excuse a procedural default.  (Answer, Doc. 26 at 97.)  However, the Ninth Circuit has observed that "there seems to be no requirement that the claim of ineffective assistance of PCR counsel as cause for an ineffective-assistance-of-sentencing-counsel claim be presented to the state courts." *Dickens v. Ryan*, 740 F.3d 1302, 1322, n.17 (9th Cir. 2014).

### e)      Application of Martinez to Petitioner

For Petitioner to rely upon *Martinez*, Petitioner must "demonstrate[e] two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting Martinez, 132 S.Ct. at 1318).

Thus, this Court must resolve whether, under *Martinez*, Petitioner's PCR counsel was ineffective so as to provide cause for Petitioner's failure to properly exhaust his claims concerning the ineffectiveness of trial counsel.

**Applicable Counsel** – Petitioner asserts in this habeas proceeding the ineffective assistance of counsel not only in the proceedings culminating in his 2012 sentence, but ineffectiveness in the 2007 DUI case.  Respondents do not contend that these claims were not subject to litigation in Petitioner's 2012 PCR proceeding.  Accordingly, the undersigned presumes, for purposes of this Report & Recommendation that such claims were open to litigation by Petitioner's PCR counsel.

However, Petitioner's claims regarding the ineffectiveness of trial and appellate counsel in the 2007 DUI and the stalking case could have been raised in PCR attacks in those cases.  The fact that Petitioner failed to bring such PCR attacks does not prevent a finding that the 2012 PCR was not "the first occasion" the State allowed those claims. *Martinez*, 132 S.Ct. at 1320.  Accordingly, to the extent that Petitioner's claims assert ineffectiveness of trial or appellate counsel in those proceedings, the ineffectiveness of his PCR counsel cannot form cause to excuse his procedural defaults under *Martinez*.

**Claims Procedurally Defaulted in Petition for Review** – Respondents properly argue that the majority of Petitioner's claims of ineffective assistance of trial and appellate counsel were raised by Petitioner to the PCR court, and thus the procedural default occurred not because of PCR counsel's failure to raise the claims to the PCR court, but because Petitioner failed to properly seek review from the Arizona Court of Appeals. *See e.g. Heinz v. Mills,* 2014 WL 4059767, at *3 (D. Or. Aug. 15, 2014) (*Martinez* did not apply because default "not caused by counsel on PCR initial review, but rather by counsel on the PCR appellate review").

In Petitioner's *pro per* PCR petition he argued that counsel Brewer, Wood, and Roser were ineffective under *Strickland*.  (Exhibit NNNN, PCR Pet. at 2.)   In particular, Petitioner asserted in his PCR Petition his claims in the following Grounds:

(1) Ground 1B(1) regarding Brewer's failure to assert the double jeopardy violation in the 2007 DUI (Brewer IAC#1) (*id.* at 3, ¶ 3);

(2) Ground 1B(2) regarding Brewer's failure to interview and call attorney Roberts regarding violations of his right to counsel (Brewer IAC#2) (*id.* at

3 ¶ 2);

(3) Ground 1B(3) regarding Brewer's failure to object to the incomplete booking video (Brewer IAC#3) (*id.* at 4 ¶ 4);

(4) Ground 1B(4) regarding Brewer's failure to file post-hearing motions based on failure to disclose the booking video (Brewer IAC#4) (*id.* at Attachment A-1 at 3-4);[11]

(5) Ground 1B(6) regarding Brewer's failure to pursue the forging of the time of the blood draw (Brewer IAC#6) (*id.* at 11 ¶ 27);

(6) Ground 1C(1) regarding Wood's failure to move to dismissed based on the lack of evidence (Wood IAC#1) (*id.* at 5 ¶ 8, 6 ¶ 9);

(7) Ground 1C(2) regarding Wood's failure to move to suppress all evidence in the 2011 sexual assault (Wood IAC#2) (*id.* at 5 ¶ 8);

(8) Ground 1C(3) regarding Wood's failure to move to suppress evidence in the 2011 sexual assault based on an illegal search (Wood IAC#3) (*id.*, Attachment A-1 at 9);

(9) Ground 1C(4) regarding Wood's failure to move to dismiss based on the lack of a victim (Wood IAC#4) (*id.* at 6 ¶ 9);

(10)    Ground 1C(5) regarding Wood's failure to move to dismiss the 2011 sexual assault based on the lack of witnesses (Wood IAC#5) (*id* Attachment C at 2, ¶ 2);

(11)    Ground 1C(6) regarding Wood's failure to move to dismiss the 2011 sexual assault based on other grounds unknown to Plaintiff (Wood IAC#6) (*id.* at Attachment A-1 at 9, ¶ 6);

(12)    Ground 1C(7) regarding Wood's failure to move to dismiss the 2011 sexual assault based on the lack of DNA evidence  (Wood IAC#7)

---

[11] Respondents contend this claim was raised in a different location. (Answer, Doc. 26 at 116 (referencing Exhibit NNNN, PCR Pet., Attachmetn C at 1, ¶¶ 10-11).)    The undersigned does not find the referenced location to reflect a claim based on a failure of disclosure, but upon the making of recording.

*(id.* at 7);

(13)      Ground 1C(8) regarding Wood's failure to move to dismiss based on the prosecutor's use of the precluded video (Wood IAC#8) (*id.* at 6 ¶ 10);

(14)      Ground 1C(9) regarding Wood's failure to object to the incomplete booking video (Wood IAC#9) (*id.* at 5 ¶ 7 (referring to ¶ 4));

(15)      Ground 1C(10) regarding Wood's failure to admit the video of denial of counsel (Wood IAC#10) (*id.* at 5 ¶ 7 (referring to ¶ 5));

(16)      Ground 1C(11) regarding Wood's failure to move to vacate orders in the 2009 DUI based on the complete booking video  (Wood IAC#11) (*id.*, Attachment A-1 at 6-7);

(17)      Ground 1C(12) regarding Wood's failure to move to dismiss the 2009 DUI based on the violation of the right to counsel  (Wood IAC#12) (*id.*, Attachment C at 1, ¶ 1; *id.*, Attachment A-1 at 6-7);

(18)      Ground 1C(13) regarding Wood's failure to move to suppress in the 2009 DUI the blood evidence based on the timing of the draw of blood (Wood IAC#13) (*id.* Attachment C at 1 ¶ 7);

(19)      Ground 1C(14) regarding Wood's failure to move to dismiss the 2009 DUI based on police tampering with evidence  (Wood IAC#14) (*id.*, Attachment C at 1 ¶12);

(20)      Ground 1C(15) regarding Wood's failure to pursue the forging of the time of the blood draw (Wood IAC#15) (*id.* at 11 ¶ 27);

(21)      Ground 1C(16) regarding Wood's failure to move to dismiss the 2009 DUI based on denial of right to independent blood test  (Wood IAC#16) (*id.*, Attachment C at 1 ¶ 8);

(22)      Ground 1C(17) regarding Wood's failure to move to dismiss the 2009 DUI based upon the presentation of the booking video  (Wood IAC#17) (*id.* at 6);

(23)     Ground 1C(18) regarding Wood's failure to move to dismiss the 2009 DUI based on commission of a criminal simulation  (Wood IAC#18) (*id.*, Attachment C at 2 ¶ 18);

(24)     Ground 1C(19) regarding Wood's failure to move to dismiss the 2009 DUI based on perjury by the police    (Wood IAC#19) (*id.*, Attachment C at 2 ¶ 19);

(25)     Ground 1C(20) regarding Wood's failure to move to dismiss the 2009 DUI based on the police's commission of criminal damage  (Wood IAC#20) (*id.*, Attachment C at 2 ¶ 20);

(26)     Ground 1C(21) regarding Wood's failure to move to dismiss the 2009 DUI based on failure to disclose DNA evidence  (Wood IAC#21) (*id.* Attachment C at 1 ¶ 13);

(27)     Ground 1C(22) regarding Wood's coercing Petitioner to plead guilty with the prosecution's email (Wood IAC#22) (*id.* at 6 ¶ 11);

(28)     Ground 1C(23) regarding Wood's failure to obtain DNA test results in the 2011 sexual assault before allowing Petitioner to plead guilty (Wood IAC#23) (*id.* at 7);

(29)     Ground 1D(1) regarding Roser's failure to raise the double jeopardy claim (Roser IAC#1) (*id.* at 8 ¶12);

(30)     Ground 1D(2) regarding Roser's failure to call character witnesses at sentencing (Roser IAC#2) (*id.* at 8 ¶ 13);

(31)     Ground 1D(3) regarding Roser's failure to review the presentence report (Roser IAC#3) (*id.* at 8 ¶ 15);

(32)     Ground 1D(7) regarding Roser's failure to object to a consecutive prison term (Roser IAC#7) (*id.* at 8 ¶ 14);

(33)     Ground 1D(8) regarding Roser's failure to object to incorrect sentencing ranges (Roser IAC#8) (*id.* at 8 ¶ 14);

(34)     Ground 1D(9) regarding Roser's failure to raise claims in the 2009

DUI/2011 sexual assault regarding the two prison terms on the 2007 DUI (Roser IAC#9) (*id.* at 8 ¶ 12).

Respondents concede, and the undersigned finds, that Petitioner (and PCR counsel) did not raise the following claims to the PCR court:

(1) Ground 1A regarding Roberts' failure to raise the double jeopardy violation in the 2007 DUI regarding the lesser included offense (Roberts IAC#1);

(2) Ground 1B(5) regarding Brewer's failure to file charges of false imprisonment based on the double jeopardy violation in the 2007 DUI (Brewer IAC#5)[12]

(3) Ground 1D(4) regarding Roser's failure to compare the presentence report with the plea agreement in the 2009 DUI/2011 sexual assault and object to the use of the additional charges in Case 2009-0017 in the 2007 DUI as a sentence enhancement  (Roser IAC#4)

(4) Ground 1D(5) regarding Roser's failure to correct sentencing errors in the plea agreement in the 2009 DUI/2011 sexual assault admitting the probation violations  (Roser IAC#5)

(5) Ground 1D(6) regarding Roser's failure to ensure the sentencing minute entry in the 2009 DUI/2011 sexual assault reflected the vacation of his misdemeanor conviction in the 2007 DUI (Roser IAC#6)

With regard to these claims, any effort by Petitioner to present them to the Arizona Court of Appeals in his petition for review would not have resulted in exhaustion, Petitioner having defaulted on them by failing to raise them below.  *See* Ariz. R. Crim. P. 32.9(c) (limiting petition for review to review of actions of the trial court on the PCR petition); *State v. Vera*, 235 Ariz. 571, 574, 334 P.3d 754, 757 (App. 2014) *cert. denied*, 136 S. Ct.

---

[12] Petitioner did assert in his PCR petition claims regarding Brewer's failure to file charges, but only based on grounds other than false imprisonment based on the double jeopardy violation.  (*See* Exhibit NNNN, PCR Pet at Exhibit A-1 at 5.)

121 (2015).  Accordingly, any ineffectiveness of PCR counsel in failing to raise these claims could constitute cause under *Martinez*.

**Standard for Ineffectiveness** - Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at  687-88.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id*. at 697.

There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.   *U.S. v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996); *U.S. v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991).   The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *U.S. v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

An objective standard applies to proving such deficient performance, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense."  *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90).   The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

"The law does not require counsel to raise every available nonfrivolous defense.  Counsel also is not required to have a tactical reason—above and beyond a reasonable

46

appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations omitted).

Moreover, it is clear that the failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).   "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."   *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

**Applicable Proceeding** – In this habeas proceeding, Petitioner attacks his detention under his 2012 sentence.  Arguably, under *Martinez* Petitioner can only seek to excuse claims of ineffective assistance of trial counsel raisable by PCR counsel in his 2012 proceeding.  Any claims of ineffective assistance in Petitioner's earlier proceedings would have been subject to review in those proceedings, and any attempt by PCR counsel to assert such claims in seeking review of the 2012 sentence would have been procedurally defaulted under Ariz. R. Crim. P. 32.2

**Failures of Trial Counsel** –   As discussed above, the instances of ineffective assistance of trial counsel which were procedurally defaulted because of PCR counsel's failure to raise them include Grounds 1A, 1B(5), 1D(4), 1D(5), and 1D(6).

Merits of Ground 1A – Roberts IAC#1 – In Ground 1A Petitioner argues that attorney Roberts' was ineffective for failing to raise the double jeopardy violation in the 2007 DUI regarding the lesser included offense (Roberts IAC#1).  (Petition, Doc. 1 at 6.)

Respondents argue, *inter alia*, that Petitioner has failed to show any prejudice from such failure because the Arizona Court of Appeals *sua sponte* vacated this conviction, and there is no authority which would have mandated vacating the greater conviction as well.  (Answer, Doc. 26 at 149-150.)

In reply, Petitioner simply argues that the ineffectiveness is apparent from the ruling of the Arizona Court of Appeals, and that as a result he spent an additional 30 days in prison.  (Reply, Doc. 29 at 12, ¶ 8.)

1      This claim could have been raised by Petitioner in a PCR attack on the 2007 DUI.

2  Accordingly, the PCR in the 2012 proceeding was not Petitioner's first opportunity to

3  present the claim to the state courts.   Consequently, *Martinez* is not applicable to this

4  claim.

5      Moreover, because, at the time Petitioner's PCR proceeding he had already fully

6  served the sentence on the lesser included offense, any challenge by PCR counsel would

7  have been futile.   Clearly, there was no longer any prejudice from the conviction itself:

8  the Arizona Court of Appeals had already vacated the conviction.   Moreover, the

9  additional sentence was already served, and thus any attack based on such sentence was

10  moot.  *See State v. Biere*, 2013 WL 1460560, at *1 (App. 2013) ("In light of the fact that

11  Biere has been released from custody during the pendency of this review, his challenges

12  to the length of his prison term and related claims of ineffective assistance of counsel are

13  moot.").

14      Accordingly, the undersigned finds no basis to conclude that PCR counsel was

15  deficient in failing to raise the claim in Ground 1A.

16      <u>Merits of Ground 1B(5) – Brewer IAC#5</u> – In Ground 1B(5), Petitioner argues

17  that attorney Brewer was ineffective for failing to file charges of false imprisonment

18  based on the double jeopardy violation in the 2007 DUI (Brewer IAC#5).   (Petition Doc.

19  1 at 7.)   Brewer represented Petitioner in his appeal from the 2007 DUI and initially in

20  the 2009 DUI.

21      Respondents argue that Brewer was not defective because Brewer had no

22  authority to file charges.[13]   (Answer, Doc. 26 at 151.)

23      Petitioner does not address the merits of this claim in his Reply.

24      As with Ground 1A, this claim could have been raised by Petitioner in a PCR

---

[13] Respondents also argue that neither the Navajo County Attorney's Office nor the police were responsible for the double jeopardy violation.  (Answer, Doc. 26 at 151.) However, the Petition does not specify who Petitioner believes charges should have been filed against.  Assuming it was the trial court (who was ultimately responsible for the error), it seems likely that judicial immunity would have precluded any prosecution.  *See Criminal Responsibility*, 48A C.J.S. Judges § 223.

attack on the 2007 DUI.   Accordingly, the PCR in the 2012 proceeding was not Petitioner's first opportunity to present the claim to the state courts.   Consequently, *Martinez* is not applicable to this claim.

Moreover, this claim is without merit.   In disposing of similar claims regarding filing charges for other perceived violations, the PCR court opined: "...the filing of criminal charges is a decision for a prosecuting agency.   Mr. Brewer's did not have the authority to file charges against the latter named parties. *State v. Tsosie*, 171 Ariz. 683, 685,832 P.2d 700, 702 (App.1992)."   (Exhibit FFFFF, Findings 3/5/14 at 12.)   The cited decision holds that decisions to prosecute are committed to the sound discretion of the prosecutor.

More importantly, Petitioner is not entitled to the effective assistance of counsel in filing charges, nor even in making complaints to a prosecuting entity in the hopes of having charges filed.   To the contrary, under the Sixth Amendment, Petitioner is entitled to the effective assistance of counsel only in his role as the accused, not as accuser.   The Sixth Amendment provides: "[i]n all criminal prosecutions, the *accused* shall enjoy the right ... to have the Assistance of Counsel for his *defence*." (Emphasis added.)

Moreover, Petitioner fails to show prejudice from the failure to pursue such charges.   Petitioner seems to be under the impression that any relationship between his criminal case and the disadvantages he complains of (e.g. the already served 30 days extra prison time) is sufficient to meet the prejudice requirement.   (*See*  Reply, Doc. 29 at 12(a).)   To the contrary, *Strickland* only finds prejudice where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Even if it could be assumed that had trial counsel raised the issue that a prosecutor would have pursued a prosecution, or have even obtained a conviction, that doing so would have altered the outcome in the instant proceeding.   There is simply no basis to find that the outcome of Petitioner's direct appeal in the 2007 DUI, his conviction and sentence in the 2009 DUI, as well as the other charges and sentences encompassed in his

1    2012 sentence, would have been different had Brewer done so.

2         Accordingly, Ground 1B(5) has no merit, and is not a substantial claim of

3    ineffective assistance within the meaning of *Martinez*.

4         <u>Ground 1D(4) – Roser IAC#4</u> – In his Ground 1D(4) Petitioner argues that

5    attorney Roser was ineffective for failing to compare the presentence report with the plea

6    agreement in the 2009 DUI/2011 sexual assault and object to the use of the additional

7    charges in Case CR2009-0017 in the 2007 DUI as a sentence enhancement.  (Petition,

8    Doc. 1 at 9.)

9         Respondents argue that Roser was not deficient because the plea agreement

10   explicitly provided for consideration of the 2007 DUI convictions in CR2009-0017.

11   (Answer, Doc. 26 at 151-152.)

12        Indeed, in regard to the conviction on the 2009 DUI, the Plea Agreement

13   provided: "The historical prior felony conviction which the defendant admits in relation

14   to this offense is Aggravated DUI, a class 4 felony, committed on or about 06-07-2007,

15   and for which the defendant was sentenced in Navajo County Superior Court Case # CR

16   20090017."  (Exhibit DDDD, Plea Agreement at 1.)

17        With regard to the conviction on the 2011 Sexual Abuse charge, the Plea

18   Agreement provided:  "The historical prior felony convicitons [sic] which the defendant

19   admits in relation to this offense are: (1) Aggravated DUI, a class 4 felony, committed on

20   or about 06-07-2007, and for which the defendant was sentenced in Navajo County

21   Superior Court Case # CR 20090017." (*Id.*)

22        Moreover, the Presentence Report made no explicit reference to any conviction in

23   case CR2009-0017.  (*See generally* Exhibit YYY, Presentence Report 12/7/11.)   At

24   most, the Report referenced that Petitioner guilty plea included "one historical prior" for

25   the 2009 DUI and "two historical priors" for the 2011 Sexual Abuse.  (*Id.* at 5.)

26        Accordingly, Ground 1D(4) has no merit, and is not a substantial claim of

27   ineffective assistance within the meaning of *Martinez*.

28        <u>Ground 1D(5) – Roser IAC#5</u> – In Ground 1D(5) Petitioner argues that counsel

50

Roser was ineffective for failing to correct sentencing errors in the plea agreement in the 2009 DUI/2011 sexual assault admitting the probation violations because the Plea Agreement did not include an admission of violating Petitioner's probation in Case CR2009-0017, and yet Petitioner was sentenced for a violation of that probation. (Petition, Doc. 1 at 9.)

Respondents concede that the Plea Agreement did not explicitly reference probation in CR2009-0017. But, Respondents argue that Petitioner fails to show ineffective assistance of Roser in this regard because it was a "clerical error" which was not prejudicial because: (1) the new convictions automatically constituted violations of the CR2009-0017 probation, and thus no admission was necessary;[14] (2) Petitioner was aware that he would receive a 2.5 year sentence for violating his probation in the 2007 DUI (albeit under the other related case numbers); and (3) the limited 5 year prison sentence under the plea agreement was far less than his exposure at trial. (Answer, Doc. 26 at 152-153.)

It is true that the Plea Agreement did not explicitly reference a violation of probation in Case CR2009-0017. Instead, it provided that Petitioner was pleading to:

> 3) Violation of term one of his probation which required him to obey all laws in both CR20071075 and CR 20090700 which required him to obey all laws by committing the new felony offense in CR 201100340 as set out above.

(Exhibit DDDD, Plea Agreement at 2.)    The Plea Agreement further provided that Petitioner would be "sentenced to presumptive prison sentences in the two cases for which he was on probation." (*Id.*)

At the change of plea, Petitioner's plea was directed to CR2007-1075 and CR2009-0700:

> THE COURT: You also are admitting to violating term one of your probation in CR2007-1075 and CR2009-700. Is that also your understanding?

---

[14] Because Respondents' first argument ignores the apparent purpose of the plea agreement to resolve all of Petitioner's pending cases under the terms of the agreement, the undersigned does not rely upon it as a basis for disposing of Petitioner's claim.

THE DEFENDANT:  Yes, sir.

THE COURT:  These are going to be nondangerous, repetitive offenses under the criminal code. Is that your understanding?

THE DEFENDANT: Yes, sir.

THE COURT:  Paragraph 1 tells you that you will be sentenced to the presumptive prison sentence in the two cases  for which you are on probation. Do you understand that?

THE DEFENDANT: Yes, sir.

(Exhibit CCCC, RT 9/1/11 at 7-8.)

In contrast, the written Sentence reflected that Petitioner was being sentenced to 2.5 years on the probation violation on each of the two felony charges in CR2009-0017. (Exhibit IIII, Sentence 4/5/12 at 4-5.)   However, the trial court's oral pronouncement reflected substantial confusion over the charges from the 2007 DUI:

THE COURT: For the class 5, CR2009-700, I'm giving him a slightly mitigated term of one year. That's mitigated because of his community activities, his substance abuse, his family support. For CR2007-1075, he's getting the presumptive term of two and a half years in the department of corrections.

MR. ROSER: Excuse me, which one, Your Honor?

THE COURT: 2007-1075.

MR. ROSER: That's the one that they recommended six months on.

THE COURT: Yes, he's going to get the two and a half on that, because that was on the aggravated DUI. The misdemeanor -- I looked at the sentencing document, all right. Let me get this again. On 07-1075, it was a misdemeanor so I'm going to give him credit for time served on that one. For CR2009-700, the class 5, I'm still giving him the one year  I mean, let's see, did I say one year? Sorry, make that .75 years, mitigated sentence.
                                * * *
MR. APIRION: But the 2.5 for the first aggravated DUI would run concurrent?

THE COURT: We didn't have a 2.5.

MR. APIRION: The aggravated DUI he was on probation for.

THE COURT: 09-117 [sic], that's not in the presentence report, page six does not have that. Was that in the plea agreement? Because they didn't talk about it.

MR. APIRION: It was addressed on the second page, violation of his probation.

THE COURT: Yeah, he'll get the presumptive two and a half years on that one, running concurrent as well. So he'll end up getting five, that was before he absconded, and now he's getting .75 years exact because of the absconding.  Credit on 2009-360 of 121 days. CR11-340 he gets credit for 0 days. On CR2009-700 he gets credit for 102 days, and they didn't figure the credit on the CR2000 -- which is the one  that you were just talking about, Mr. Apirion. He has more  than four cases?

MR. APIRION: Only because of that misdemeanor.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

MR. ROSER: So you are saying five cases?

MR. APIRION: Yes, but I haven't tracked the fifth case.

THE COURT: The misdemeanor is on page six, which is the other one. 2009-17, so it's 2009-17. Do we know how much credit he has on that one?

MR. ROSER: 2009-

THE COURT: 17.

MR. ROSER: I don't see that in the plea agreement.

THE COURT: I don't either. Well, I guess in the plea agreement there are only four cases listed.

MR. APIRION: And the plea agreement, you know, substantively addresses the four felonies, if there's a confusion with a CR number --

THE COURT: Does CR2007-1075 have a felony in it?

THE CLERK: No, the sentencing covers that case and 09-17 -- 09-17 was a jury trial.

THE COURT: 09-17 was the one that was a jury trial and is that the one you are talking about, Mr. Apirion?

MR. APIRION: Yes, the aggravated DUI earlier.

THE COURT: So for that one he gets the presumptive of two and a half but the credit, do you know?

MR. APIRION: He did do the four months in prison on that, plus whatever holding time.

THE DEFENDANT: I did five months because of a clerical error.

THE COURT: Okay. So five months credit on that one plus the hundred days.

MR. ROSER: Right.

15

(Exhibit HHHH RT 4/5/12 at 17-21.)

16

17

18

19

In sum, it is clear that the parties utilized interchangeably the case numbers from the consolidated cases (CR2007-1075 and CR2009-0017) on the 2007 DUI. It is also clear that Petitioner was admitting a violation of probation in the 2007 DUI, and agreeing to be sentenced to a presumptive prison term for that violation.

20

21

22

23

24

25

Petitioner was aware that a year before the misdemeanor conviction in CR2007-1075 had been vacated by the Arizona Court of Appeals. (*See* Mem. Dec. 3/24/11 at 17.) That left only the two felony charges in CR2009-0017. Moreover, a prison term was not possible for the violation of probation on the vacated misdemeanor charge. It is also clear that Petitioner ultimately received what he bargained for: a presumptive prison term on the aggravated DUI probation violation.

26

27

28

Had counsel Roser objected, the trial court could have disposed of the objection on the basis that the cases had been consolidated under Ariz. R. Crim. P. 13.3, and thus reference to one was the equivalent of reference to the other. (*See* Exhibit F, M.E. 4/6/09

("The Court granted the State's motion to consolidate under Rule 13.3(a) as the crimes arose out of the same conduct on June 7, 2007.")  *Cf.* 17C Ariz. Rev. Stat., Super. Ct. Local Prac.Rules, Maricopa Co., Rule 2.1 ("Unless the court shall otherwise order, when two (2) or more cases are consolidated, the Clerk of the Superior Court shall regard the number of the case filed first as the controlling number of the consolidated cases and all further pleadings and papers shall be filed and docketed under that number only.")

Even if the trial court had found merit to the objection, the most likely result would have been the trial court's rejection of the plea.  *See* Ariz. R. Crim. P. 17.4(d) (permitting rejection of plea agreement "after accepting the agreement and reviewing a presentence report"); *State v. Chavez*, 130 Ariz. 438, 439, 636 P.3d 1220, 1221 (1981) (mutual mistake of essential fact underlying plea agreement justifies rescission).

Under those circumstances, and particularly because the net prison term was the same as what Petitioner had agree to, counsel could have made the reasonable tactical determination that objecting would not have been to Petitioner's benefit.  The most likely result would have simply been the correction of the case number errors, and the same sentence subsequently being imposed.  Alternatively, the state could have responded by seeking to rescind the agreement altogether and insisted on going to trial.  In that instance, Petitioner would have potentially been subject to substantially harsher sentences on the original charges, including the loss of the agreement to concurrent sentencing.

Based on the foregoing, the undersigned concludes that Ground 1D(5) has no merit, and is not a substantial claim of ineffective assistance within the meaning of *Martinez*.

Ground 1D(6) – Roser IAC#6 – In Ground 1D(6), Petitioner argues that Roser was ineffective for failing to ensure the sentencing minute entry in the 2009 DUI/2011 sexual assault reflected the vacation of his misdemeanor conviction in the 2007 DUI (Roser IAC#6).  (Petition, Doc. 1 at 9.)

Respondents argue that Petitioner has failed to show deficient performance

because the sentencing minute entry does not reference the 2007 misdemeanor DUI. They argue that Petitioner has failed to show prejudice because: (1) the conviction was vacated and thus a nullity; (2) it did not affect Petitioner's 2012 sentence; and (3) Petitioner is no longer detained on the 2007 misdemeanor DUI.  (Answer, Doc. 26 at 154.)

Petitioner does not address this claim in his Reply.

Petitioner fails to show deficient performance because he proffers no reason why counsel should have taken the extraordinary step of including a reference to a vacated conviction which was not being relied upon in the relevant sentence.  The misdemeanor conviction occurred in case CR2007-1075.  (*See* Exhibit M, Sentence 8/27/09.)  The only cases referenced in the sentence issued on April 5, 2012 were CR2009-0017, CR2009-0700, CR2009-0960, and CR2011-0340.  (Exhibit III, Sentence 4/5/12.)

Moreover, Petitioner fails to show any resulting prejudice.  The misdemeanor had been indisputably vacated, and was not part of the calculation of the 2012 sentence.  It is true that the conviction was listed in the Presentence Report as a basis for an existing probation term.  (*See*  Exhibit YYY at 1.)  However, that report omitted reference to the convictions in the 2007 DUI which were the true source of the probation.  (*Id.* at 5.)

Further, as discussed hereinabove in connection with Ground 1D(5) regarding the references in the plea agreement (and at sentencing) to the misdemeanor case number, the record was ultimately clear that Petitioner had been convicting and placed on probation on felony offenses in the 2007 DUI case(s), resulting in him being placed on probation, which was violated by his new convictions.  Making reference to the vacating of the misdemeanor would not have altered his 2012 sentence.   Accordingly, the undersigned finds no prejudice.

Accordingly, Ground 1D(5) has no merit, and is not a substantial claim of ineffective assistance within the meaning of *Martinez*.

**Conclusion regarding *Martinez*** –  Based on the foregoing, the undersigned finds that Petitioner fails to show a substantial claim of ineffective assistance of trial counsel

1    procedurally defaulted by PCR counsel's failure to raise them, and thus fails to show a

2    basis to excuse his procedural defaults as a result of PCR counsel's failure to raise such

3    claims.

4

5    **7.    <u>Actual Innocence</u>**

6          **The *<u>Schlup</u>* Gateway** - The standard for "cause and prejudice" is one of

7    discretion intended to be flexible and yielding to exceptional circumstances, to avoid a

8    "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909

9    (9th Cir. 1986). Accordingly, failure to establish cause may be excused "in an

10   extraordinary case, where a constitutional violation has probably resulted in the

11   conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496

12   (1986) (emphasis added).

13         A petitioner asserting his actual innocence of the underlying crime must show "it

14   is more likely than not that no reasonable juror would have convicted him in the light of

15   the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327

16   (1995). A showing that a reasonable doubt exists in the light of the new evidence is not

17   sufficient. Rather, the petitioner must show that no reasonable juror would have found

18   the defendant guilty. *Id*. at 329. This standard is referred to as the "*Schlup*

19   gateway." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

20         It is unclear whether the actual innocence gateway applies to defendants who

21   were not convicted on trial, but pled not guilty or no contest. *See Smith v. Baldwin*, 510

22   F.3d 1127, 1140 (9th Cir. 2007). *But see Bousley v. U.S.*, 523 U.S. 614, 624 (1998)

23   (remanding for development of actual innocence to excuse procedural default of

24   pleading federal defendant). The undersigned presumes, for purposes of this Report and

25   Recommendation, that the gateway does apply.

26         Here, Petitioner asserts that DNA testing would reveal his innocence of the sexual

27   abuse charge, and complains that such testing has not been allowed.

28         **More Serious Charges** - What is clear is that "[i]n cases where the Government

56

has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Bousley*, 23 U.S. at 624.

Here, Petitioner asserts that DNA testing would reveal his innocence of the sexual abuse charge, a class 5 felony.  (*See* Exhibit DDDD, Plea Agreement at 1.)  However, Petitioner was originally charged in Case CR2011-0340 with the more serious charge of sexual assault, a class 2 felony.  (Exhibit VVV Indictment.)   Accordingly, Petitioner must also show his actual innocence of the sexual assault charge.

Moreover, as part of the same plea agreement, the state also forwent charges in Case CR2009-0960, wherein Petitioner was charged with both aggravated DUI, a class 4 felony and aggravated driving with a BAC of .08% or more, a class 4 felony. (Exhibit BB, Indictment.)  Instead, Petitioner was permitted to plead guilty to only the aggravated DUI charge.  (Exhibit DDDD, Plea Agreement.)  Accordingly, to be entitled to any relief for his actual innocence, Petitioner must also show his actual innocence of the dismissed charge in CR2009-0960.

Petitioner proffers no new reliable evidence of his actual innocence of the charge of aggravated driving with a BAC of 0.08% or more.   At most, Petitioner argues that the timing of the blood test was misrepresented.   While that might produce some question whether reliable evidence of his guilt on that charge would have been available at trial, it does not of itself constitute affirmative evidence of his innocence. For example, Petitioner proffers nothing to show that the actual time of collection mandates a determination that his BAC was less than 0.8% at the relevant times.  *See United States v. DuBois*, 645 F.2d 642, 644 (8th Cir. 1981) (discussing retrograde analysis of blood alcohol level, and collecting cases).  *See also* 28 Ariz. Rev. Stat. § 28-1381(A)(2) (".08 or more within two hours of driving").

Accordingly, even if Petitioner could show his actual innocence of the sexual assault charge, he is not entitled to pass through the *Schlup* gateway.

**Pertinent Claims** – Even if Petitioner could pass through the *Schlup* gateway on just his claims of actual innocence of the sexual assault charge, the resulting relief would

be limited to his claims related to the sexual abuse charge.  Although deciding the issue as "a question of first impression," the Ninth Circuit has concluded "both as a matter of law and of common sense, that a demonstration of actual innocence under *Schlup* cannot excuse a petitioner's procedural default for more than the counts as to which he has shown actual innocence." *Vosgien v. Persson*, 742 F.3d 1131, 1136 (9th Cir. 2014). *See Alvarez v. Gipson*, 2014 WL 1017607, at *2 (N.D. Cal. Mar. 12, 2014) (applying *Vosgien* to actual innocence gateway to statute of limitations).

Here, the claims asserted in Ground 1A (ineffective assistance of Roberts), Ground 1B (ineffective assistance of Brewer), Grounds 1C(8) through 1C(21) (ineffective assistance of Wood regarding 2009 DUI), Grounds 1D(1), (4) through (7), and (9) (ineffective assistance of Rosser regarding 2007 DUI and 2009 DUI), Grounds 2A through 2E (double jeopardy violations regarding 2007 DUI and 2009 DUI), are unrelated to Petitioner's sexual abuse conviction and the sexual assault charge, and thus a showing of actual innocence on those charges would not avoid Petitioner's procedural default on those charges.

**New Reliable Evidence** - A claim of actual innocence is not supported by speculation about what unpresented evidence might show.  *See Botts v. Biter*, 2014 WL 5661554, at *12 (C.D. Cal. June 9, 2014) report and recommendation adopted, 2014 WL 5602751 (C.D. Cal. Nov. 4, 2014) ("petitioner's mere speculation that the DNA test results would enable him to meet his burden under *Schlup* falls far short of meeting the *Schlup* standard").  Here, Petitioner proffers nothing more than speculation that: (1) testable samples were recovered; (2) remain available for testing; and (3) that testing would exonerate Petitioner.  Speculation is not evidence.

Rule 6(a), Rules Governing Section 2254 Cases, does permit a party to conduct discovery "for good cause."  That requires that the petitioner must demonstrate that "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed" be able to support his claim.  *Harris v. Nelson*, 394 U.S. 286, 300 (1969). However, Petitioner fails to offer such specific allegations.

In applying the Innocence Protection Act to a request for DNA testing, the Ninth Circuit has observed:

> Neither innocence nor guilt can be proved with scientific certainty, regardless of whether the proof is scientific, and the significance of evidence necessarily varies from case to case. Where the presence or absence of the movant's DNA would not show actual innocence, there is no reason to test for it.

*United States v. Watson*, 792 F.3d 1174, 1180 (9th Cir. 2015).  "DNA testing alone does not always resolve a case. Where there is enough other incriminating evidence and an explanation for the DNA result, science alone cannot prove a prisoner innocent." *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 62 (2009).  *See id.* at 81 *et seq.* (Alito, J. dissenting) (discussing potential for contaminated and mixed samples).

This case is not an ordinary case of mistaken identification of a stranger as a rapist.  The victim told police officers that she knew Petitioner from his bar.  (Exhibit YYY, Presentence Report at 1.)  Immediately after she ran from the back lounge into the bar, she identified Petitioner to employees/patrons as her assailant.  (*Id.* at 2.) The responding officers then found Petitioner in the back lounge, appearing "very intoxicated." (*Id.*) (*See also* Exhibit VVVV, Reply on Mot. for DNA, attachment "CR", Police Reports.)

If no testable DNA were recovered, nor even if DNA of a third party were found, would that necessary exculpate Petitioner.  Samples were taken from both Petitioner and the victim.  However, the victim described touching by her assailant, with fingers, a penis, and his mouth – but there is nothing to suggest that ejaculate or another clearly identifiable and inculpatory source of DNA was left.  (*See* Exhibit VVVV, attachments (police reports).)  *See* Elizabeth A. Laughton, *Mckithen v. Brown: Due Process and Post-Conviction DNA Testing,* Duke L. & Tech. Rev. 7, 24 (2008) ("One does not necessarily leave enough DNA for testing wherever one touches.").  *See also U.S. v. Pitera*, 675 F.3d 122 (2nd Cir. 2012) (third party's DNA on murder weapon would not establish actual innocence); *U.S. v. Jordan*, 594 F.3d 1265 (10th Cir. 2010) (admission

that defendant handled murder weapon meant DNA evidence would not establish innocence);

Accordingly, Petitioner fails to make a showing that no reasonable juror would have found him guilty of the sexual assault, and fails to proffer anything to support a request for discovery to support his assertions of actual innocence.

Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

**B.** **OTHER DEFENSES**

Respondents argue that various claims were either waived as a result of Petitioner's guilty plea, or are non-cognizable state law claims. Because the undersigned finds all of Petitioner claims plainly procedurally defaulted, these other defenses are not reached.

**C. MOTIONS FOR DISCOVERY AND EVIDENTIARY HEARING**

On September 9, 2015, Petitioner filed a Motion for Disclosure of Evidence (Doc. 30) and a Motion for Evidentiary Hearing (Doc. 31). Respondents have not responded to either motion.

**Motion for Discovery** - In his Motion for Disclosure of Evidence (Doc. 30), Petitioner requests discovery of four categories of information: (1) transcripts of interviews of counsel Wood and Brewer; (2) DNA testing; (3) the booking video; and (4) a deposition of counsel Roberts regarding violation of the right to counsel.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a), provides: "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Availability of any discovery during habeas proceedings is committed to sound discretion of the district

court.  *Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993).   "'[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.'"  *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).      However, habeas petitioners may not "use federal discovery for fishing expeditions to investigate mere speculation."  *Calderon v. U.S. Dist. Court*, 98 F.3d 1102, 1106 (9th Cir.1996) (citation omitted).

Here, because the undersigned has concluded that all of Petitioner's claims are procedurally defaulted, discovery is only appropriate as necessary to establish cause and prejudice or Petitioner's actual innocence.  And Petitioner fails to show how (1) the Wood and Brewer interviews or (4) the Roberts deposition would show cause and prejudice or Petitioner's actual innocence.  This evidence relates, instead, to the merits of Petitioner's claims.   Thus, at least given the procedural posture of this case, this discovery could not entitle Petitioner to relief.

With regard to the DNA testing, as discussed hereinabove, Petitioner does argue that the DNA testing would establish his actual innocence, but fails to proffer specific allegations to raise this assertion beyond mere speculation, and thus fails to establish good cause to proceed with such discovery under Rule 6, Rules Governing Section 2254 Cases.

Petitioner also fails to show how the booking video would establish his actual innocence.  At most, Petitioner suggests that it would reflect a falsification of the timing of the blood draw.   But, as discussed hereinabove, Petitioner fails to show that such falsification would establish his actual innocence.  Accordingly, Petitioner fails to show good cause to conduct such discovery.

Therefore, this motion will be denied.

**Motion for Evidentiary Hearing** – In his Motion for Evidentiary Hearing (Doc. 31), Petitioner requests an evidentiary hearing to support the merits of his claims. Petitioner fails to support his motion with any reference to specific evidence to be

submitted at such a hearing.  "We begin with the rule that no such hearing is required '[i]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1148 (9th Cir. 2012).  Moreover, a bald request for an evidentiary hearing need not be granted.  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Where a petitioner does not proffer any evidence to be adduced at an evidentiary hearing which would prove the allegations of the petition, the habeas court need not grant a hearing.  *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006)  ("The failure to proffer any additional evidence defeats [petitioner's] argument that he was entitled to an additional evidentiary hearing in federal court."); *Williams v. Bagley,* 380 F.3d 932, 977 (6th Cir.2004) ("district court did not abuse its discretion in denying Williams's request, given his failure to specify ... what could be discovered through an evidentiary hearing"); *Lincecum v. Collins,* 958 F.2d 1271, 1279–80 (5th Cir.1992) (denying evidentiary hearing "[a]bsent any concrete indication of the substance of the mitigating evidence" the hearing supposedly would provide).

Moreover, to the extent that Petitioner simply would intend to present the evidence referenced in his Motion to Disclose Evidence (Doc. 30), such evidence would not be sufficient to overcome Petitioner's procedural defaults.

Finally, any evidentiary hearing on the merits of Petitioner's claims would only be relevant to the extent that such merits would show cause to excuse Petitioner's procedural defaults.  Petitioner does not show how such is the case.

Accordingly, this motion will be denied.


## IV.   CERTIFICATE OF APPEALABILITY

**Ruling  Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability

when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in on procedural grounds.  Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

/ /

/ /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.     ORDERS

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Disclosure of Evidence, filed September 9, 2015 (Doc. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Evidentiary Hearing, filed September 9, 2015 (Doc. 31) is **DENIED**.

## VI.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed February 19, 2015 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VII.   EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-

47 (9th Cir. 2007).

Dated: January 12, 2016

15-8020r RR 15 11 24 on HC.docx

James F. Metcalf
United States Magistrate Judge